Good morning, Your Honors. I am Robert R. Bryan, Counsel for Kenneth Gay. The issue before this Court today is quite unusual, and it's a very narrow one. And that is, in a case such as this, the rare case, in which there is persuasive evidence of innocence, and there's no action on that issue on state exhaustion pages proceedings, year after year. May we proceed now federally on that issue. 2228 U.S.C. 2254 B1B provides, of course, under subsection A, that a habeas issue or issues may proceed federally if they've been exhausted. It says nothing about waiving. What it says is, exhaustion, the remedies available in the courts of the state are, and then it goes to subsection B1 and 2, which specifically pertains to what is before this Court, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the appellant. And I submit that, yes, there is under B1 a state corrective process, of course, habeas corpus. But I submit under 2 that that is very ineffective. I would ask the Court to take initial notice, and I can follow, I will follow this up with a letter, Judge Ellicorn, in his U.S.C. Law Review article in May, did not address specifically this point, but much broader brush strokes about the incredible delays by the California Supreme Court in addressing all capital cases, and certainly cases of this nature in which they're back for exhaustion, because the Court is just overwhelmed with such a backlog of cases. As a matter of fact, the title presupposes the problem of the Law Review article, Remedies for California's Death Row Deadlock. Yeah, so if I may, what is the period of delay that we're looking at here? Are we just reviewing the 19 months that the district court had in front of them, in front of him, or are we now looking at, I think it's almost two years, eight months delay? It's actually three years at the end of this month. It's three years now. That the state petition, exhaustion petition was filed. There are two state exhaustion petitions. Well, don't we look at when the briefing was completed in the California Supreme Court, which was March 14, 05? Well, if you look at that, then, yes, it is a lesser period. However, Well, I'm just saying for purposes, we have to analyze this under cofactors, and in co, that was almost four years. I don't think we're quite there yet in this case. Well, I submit that the period is considerably longer. When the state habeas, the initial state habeas, was filed in the late 1980s, early 1990s, Mr. Gay, as he did at the time of arrest, said, I'm innocent. I did not kill this police officer. However, in 1998, the Supreme Court, now, 98, the Supreme Court reversed only as to penalty after a lengthy evidentiary hearing. The lengthy evidentiary hearing before that, that led to that reversal, the issues were confined to penalty, not guilt. So his claims of innocence were bypassed. So he was in a holding pattern. Those were in a holding pattern. He was on the treadmill, I refer to, in some cases, referred to. When he went back for retrial, finally, he did not have, as Judge Ellicott points out is a problem inherent in any of these cases, he did not have the funds to investigate. When it went back for retrial in Los Angeles in 1998 on penalty, counsel did a full investigation that included also the guilt phase. And so much more evidence was developed, ballistics, a whole array of forensics, and that people could not have, it was impossible for people to. But correct me if I'm wrong, but on the first round of habeas, the California courts upheld the convictions, right? Yes, that is correct. Okay. So then go on. All right. So that's why it wouldn't be litigated the first time. Exactly. But on habeas, innocence was. But the initial habeas back in the early 1990s did not have certainly the bulk of evidence of innocence that we have now because of the penalty retrial. However, at the penalty retrial, the state trial judge, and this is on consideration now in a penalty appeal that will be argued, I believe we agreed probably will be argued in January by other counsel for the petitioner, the same counsel for the state. The judge would not allow in any of the guilt phase evidence, but it was developed. So when I was allowed to proceed under Phillips federally in 2001 on federal habeas corpus, I presented that evidence, did a further, of course, extensive investigation. And then it was decided by Judge Feist that the claims were obviously unexhausted, so it had to go back. Can I ask you a question here? I'm a little troubled by the jurisdictional issue in the collateral order doctrine. Isn't it the case that your client could continue to make motions to the district court to excuse the exhaustion requirement during the stay in abeyance period? Can you explain how, assuming he can continue to make those motions, how this could be a final order that we could review? Judge Acuda, if I may just ask one question. I'm a little unclear. What period are you talking? During this period right now, is the district court maintaining a stay in abeyance for the unexhausted claims? Well, the U.S. district court did not find that that was a problem. This was a final order that was rendered in February of this year in the U.S. district court. And I'll just be very candid, as far as fairness, I don't know where else we can go. So the district court denied the motion. But is there anything stopping your client from making additional motions as time passes? No, and that's been suggested by the attorney general's office, that we should wait until 100 months. He's been on death row. He was arrested 25 years ago. He's been on death row 22 years. He's been maintaining all along and trying to raise his innocence issues. At trial, the attorney he had, and pardon my expression, the dump truck of an attorney he had, who was later disbarred, who was under investigation for the murder of a partner for embezzling funds, subsequently disbarred, unrelated to this case, and being investigated by the same office that was prosecuting my client, the district attorney's office, at the time of the trial, did no investigation at all, had no investigator. He presented no evidence. And my client kept saying, I'm innocent, and this evidence needs to be developed. I'm sure it's there. Is your client currently on death row? Yes, Your Honor. So was there a time when he was removed from death row and then he was put back on death row? No. Well, he was returned when the case was reversed in 1998. He was sent back to Los Angeles Superior Court for retrial on penalty. So really your argument is, and there is a question of whether it's a final. I think that's a question under Cohen. Assuming we got over that. You're saying, you're really saying 22 years or 25 years is too long a period to wait to present your claims of actual innocence, that you should have had a forum, and that we know realistically, I've read Judge Alarcon's article, and I think probably the other judges have read it too. I don't know. I would guess they would have. That it's just unrealistic for us to expect that the California Supreme Court is going to actually get to this at any time soon. So you're trying to bring this to the court. Yes. We're trying to bring it under 28 U.S.C. 2254 B1B under subsections 2 and 1 and 2, because there is no reasonable process to address. The problem is my client has nowhere to go. And assuming, and there are no standards in the state Supreme Court, absolutely none on this, as Shlop, the Delo case referred to, this very rare, narrow category of cases where there's persuasive evidence of innocence. Now, the Shlop gateway gets you out of causing prejudice to get you out of the exhaustion requirement? Yes. And as I pointed out, 2254 doesn't refer to avoiding exhaustion. It's either exhaustion or if there's an available unaffected process. And we submit clearly that there's a lack of availability of a reasonable process to address habeas claims of somebody who has compelling evidence of innocence in the state court, again, through no fault of the Supreme Court, because they're overwhelmed with all of these capital cases that are approaching 700, I believe. And my client has nowhere to go. Now, if they had procedures, may I suggest this? If the state Supreme Court had procedures and says, okay, we will address this expeditiously, the threshold issue of whether or not you have presented on paper persuasive evidence, affidavits, reports and so forth, if you have, then we're going to put this case, if we feel that you met that first threshold issue, you got over the first hurdle, then we will go to hurdle number two, and that is that we, well, we'll put this in a separate category that it will move ahead of the class, so to speak. It will be expedited. But what's happened is that hasn't happened. There's absolutely no procedure in the state for this unusual type of situation. So my client is stuck in legal limbo. He's on that treadmill, and he's not getting anywhere fast. And if this penalty phase direct appeal argument from the penalty retrial, if that results in a reversal, then this is going to be exactly what happened in the late 90s with these issues. They're going to just sit there in a holding pattern while the case returns to Los Angeles for a second penalty retrial, third penalty trial, if you will. And Mr. Winters from the Attorney General's office suggested in his briefing, well, there's nothing to keep us from coming back and coming back. Everybody seems to recognize that, that we can come back. And the U.S. District Court recognized that. And so is there a litmus test? Do we need 30 years? What are your non what you have exhausted? This is a mixed petition, right? Exactly. So could you pursue the claims that you have exhausted? Any of them have to do with guilt or innocence? No. All of the issues that were sent back were the ones that I presented under the Phillips, the ones that relate to innocence. And we cannot address those. I mean, those are back in the State Court. That's the problem I have. And, yes, we had a very mixed petition. The Federal level had not seen this before the Federal courts. And I just, there must be something fashioned for the few cases from time to time that are in this category. There must be something fashioned so that these issues, these claims are addressed where the person, where there's persuasive evidence of innocence. Now, if we had, if there was a procedure in State Court and we did not meet the first threshold, I mean, there would be no reason to be here today. But after when the Habeas, the guilt phase, innocence related Habeas issues, and there were two, there are two pending in State Court, the Habeas Corpus Resource Center split them. They said, okay, we're going to treat all these innocence related separately from the penalty. And they filed one January 28, 2004. And in that petition, they asked for expedited consideration because of the unusual situation. Then they filed, and they also filed separately, a motion asking for the same thing. After about eight months, that was not addressed. So they filed a motion for the court to address the previous motion and to put this on a fast track, just these narrow issues. And the court in August of 2005 rendered an order with no comment. So we do not know why the court just denied it. So they're just there in limbo. And I do not consider, well, this just, I'm a lawyer, I'm arguing on behalf of my client who's sitting on death row for a very long time. And it looks like he'll be there a long time in the future if we do not get relief here. I mean, do we come back, as suggested by the Attorney General's office, in 100 months? I mean, we're getting to 30 years. Do we come back then to the U.S. District Court, and if relief's denied, then come back and pester you some more? Or do we come back when it's been 50 months, 60? I do not know, and that seems very artificial to me. It just seems unfair, where, again, this narrow exception of where there's persuasive claims based on persuasive evidence of innocence, not innocence in and of itself, obviously. We're not at the 50 months yet. We're at the 33 months. It's going to be 36 months at the end of this month. Isn't that right? Yes. From the time the petition was filed, the State Exhaustion Petition was filed. But innocence issues were presented to the State of California in the Superior Court between 1998 and 2000 when it went back for retrial. Even though it was on penalty, those issues were presented. And the courts said, no, I'm not going to hear them. They're not part of it. Even though a lingering doubt is a mitigating factor, I'm not going to let them even come in. But the evidence was developed by the Los Angeles Public Defender's Office, and it was there. And because they had the funds to investigate and develop this. So if the state court denied the innocence claim on procedural bar grounds, you didn't raise it timely, would that actually put you in a better position because then you're raising that, your actual innocence claim under the cause and prejudice rules to the district court? Well, I think it would help, certainly. That would be kind of a ridiculous ruling. They do not give, back in the old days in this case, $3,000 to investigate something like this. And now even at $25,000, it's woefully short of what this one involves. But if the court made such a ruling, sure. But the state court is not even addressing this. They're not even telling us, well, we're not going to address this because we're going to take our own good time or we're not going to do it because of some procedural bar, which, I mean, we were doing. Well, it's your third habeas to the state court, so. Right. And so there's a habeas sitting there, and it may be like the last one sitting there on these type of issues, guilt-related based or intertwined constitutional violations may be sitting there five years from now. And I'm sure this court has more to do and the U.S. District Court has more to do than for me to keep, us to keep coming back to you and saying, well, when do we pass the magic, that arbitrary time? And, again, bear in mind, he was arrested 25 years ago, he was convicted 22 years ago. Innocence began to be raised as formal issues on habeas back in the 90s. And but yet the only thing certified for an evidentiary hearing was on penalty back in the late 90s. And we have no forum. And Herrera presupposed there was a viable state process. Herrera presupposed that. And yet there's not. And the ability to enforce this, to do this, to do that, to do this, to do that, to do that, to do this, to do that, is not here. Thank you, Your Honor. Thank you, counsel. May it please the Court, supervising Deputy Attorney General Lance Winters for the respondent, the warden, I would like to note first that the California Supreme Court has sent letters to counsel on the penalty appeal that it is tentatively planning to put it on the oral argument calendar for January of 2008. Now the penalty appeal, the death penalty was reimposed. Correct. There was a re-penalty trial where the death penalty was again imposed, and that appeal is pending in the California Supreme Court. How does that affect the California court's adjudication of the unexhausted claims? Well, I don't think it affects it directly, but I think it shows that the court is working on Petitioner's case. They are looking at his conviction, at the judgment in his case. So I think, you know, to the extent you can read the tea leaves, it shows that something's going on. And I think that your question brings up a point that Mr. Bryant made, that, you know, if he were to get relief on the penalty, then his guilt phase claims will just languish. And really that doesn't make any sense. You know, before, you had a situation where there was a State penalty habeas that or, excuse me, a State habeas that had both guilt and penalty claims, and they weren't going to decide half of the petition while they were having an evidentiary hearing on the other half. So that those claims did lie for a while. But now it's not like that. And, in fact, even the State habeas petitions that are filed are separate of guilt-phase claims versus penalty-phase claims. And if anything, the California Supreme Court has a motivation to address the guilt-phase petition expeditiously, especially if there's going to be a penalty remodeled.  It could do that, right. Now, in looking at the cofactors, do we have, and I pulled up the docket to look to try to read tea leaves myself, do we have any way of knowing what the reasons are for the delay in this particular case, other than the general length of time it takes in California? I mean, yes, there are things that indicate why there's a delay. This is a big case. This is a very complex case. And the petition that was filed, the guilt-phase petition that was filed that Petitioner is claiming is taking too long to decide is 360 pages long. It raises about 17 claims. It includes a box of exhibits just for the habeas. And we're talking about six boxes of an underlying trial court record. It's a very complex petition to be deciding. I think that's why the Court has taken 33 months thus far to deliberate on that petition. I don't think that's an inordinate amount of delay. The next one. That's for the guilt phase? That is for the guilt-phase petition. And is that what I think? I thought you said they were going to decide the penalty petition at the or next month. No. The appeal of the penalty is going to be set for oral argument in January. Oh, okay. All right. The direct appeal of that. Right. Right. And it makes it ‑‑ I know it seems a little backwards to be deciding the penalty appeal before perhaps a habeas petition. But, you know, when we talk about a criminal case, the trial is the main event, right? Yeah. And after that, how do we make sure that the trial is right? Direct appeal. You have a right to counsel on appeal. And you have a right to an appeal. And you have a right to an effective counsel on appeal. Habeas, that's the extraordinary remedy. So we don't want someone sitting on death row when they haven't even had their appeal yet. That gets a more primary consideration. And, you know, and then usually after some time after the appeal has been decided, assuming it's been affirmed and not reversed for other reasons, then they would go on to decide a habeas petition. And certainly, as I suggested, I think the guilt phase petition in this case, it would only make sense for the California Supreme Court to want to decide that, especially if they reverse the penalty. Because if they reverse the penalty, they don't want to have a penalty retrial and then reverse it on guilt phase claims. They want to decide that guilt phase petition to make sure that if it's going to go back for anything, we need to know everything that it's going to have to go back for. What if they decide to reverse the penalty phase, and so the penalty phase is going to have to be, I guess, it's undone. It's undone. Why would that cause them to expedite the guilt claims? Well, because if the State is going to go to the trouble of a penalty retrial, the California Supreme Court has an incentive of just mere allocation of resources to, if it's going to have to go back for a retrial, why would we wait? Why would we have them go through that proceeding when perhaps another six months later we decide he's entitled to relief on the guilt phase? Well, what if they don't do that? Well, I mean, at some point the State could just waive the exhaustion requirement, couldn't it? It could. We have elected not to. Is there at some point in the State Attorney General's office that, given the situation in California, you think you'll get together and decide at some point some of these things? It's certainly possible. I mean, you know, this case is strategically tortured for many reasons, but one of them is, is that, you know, his conviction is not even final in State court yet. But he was granted the extraordinary remedy of proceeding on his extraordinary remedy by going forward on the guilt phase claims, even though his conviction is not final. And that was all premised, of course, on the promise that the claims raised would be exhaustive guilt phase claims. Well, that didn't happen. Instead, Petitioner chose to capitalize on the substantial new evidence that was developed at the penalty phase retrial during the State habeas penalty discovery proceedings to create an entirely new claim of innocence. And I think it's fairest for the State court to have the first crack at that, And two, in order for the warden and the State to get the appropriate benefits of AEDPA review, we need a State court adjudication on those claims. You know, Petitioner has made the point that there's no special exception for expediting claims of or expediting petitions that have claims of innocence. But, you know, the Supreme Court has pretty much rejected something like that in Duckworth, where they said you don't get excused from exhaustion just because you have a clear violation. And even in Schlupf v. Dello, they said innocence was a sort of an excuse for procedural bars, not exhaustion. And the point is, is that as the court said in Duckworth, such a sort of claim would be unworkable, because basically every petitioner you would see would have a claim of innocence. And in order to decide, and so all of them would get expedited consideration and therefore you're sort of back to square one. And I should note, too, that the Federal system, of course, has no exception or special consideration for expedited consideration of petitions with actual innocence claims, and I don't think that system is procedurally defective or unconstitutional in any way. I read somewhere that the California Supreme Court was thinking of dishing out all the death penalty claims to all the courts of appeals. Do you know where that stands? I know that there was a proposal made. I don't know sort of what status the proposal is at. And I believe the proposal, as I understand it, was that rather than have direct appeals go directly to the California Supreme Court, they would go to the California Court of Appeal. You know, which would be a change of allocation of resources, and I think that's in part a recognition of the fact that, you know, the California death penalty has been on the books for 30 years now almost, and most of the sort of big questions about constitutionality and those sorts of things have been settled. And for the most part, when you get a direct appeal in a death case, it's larger and more complex, but the issues are not necessarily more difficult than in any other criminal felony appeal. I think, as I recall from my reading, that that would, for that to change, it would take a constitutional amendment. That was my next question, is whether it's in the Constitution that you have a right of direct appeal. Yes, I believe it is. And there's, you know, there's different ways of amending that, and, you know, it's being discussed as to whether and how to best do that. And counsel also mentioned another thing that has been in the press recently about the problems with appointing counsel. And I'd just like to point out that this is not a problem in this case. Petitioner, after his penalty phase retrial occurred, and he was again given a death judgment, he more or less jumped to the head of the line and got appointment of counsel on direct appeal and habeas almost immediately. So even though that there's generally a four-year wait for counsel, Petitioner did not suffer from that. So, again, I think it's another indication that, you know, the Court, the California Supreme Court recognizes that this case is an old one, and they want to decide it expeditiously, but they shouldn't rush to judgment either. Petitioner made the point that, you know, his client has been sitting on death row for a long time now. But what he fails to mention is that it's taken him 20 years to raise the claims that the Cal Supreme are now addressing. In other words, he didn't he hasn't been raising and battling this claim for 25 years. Right. But he didn't have the opportunity to gather that evidence until more recently. That's not really quite fair. I mean, he didn't have the money or the resources to gather the additional evidence. Well, he did have counsel at trial in his first guilt phase trial. That was the ineffective one, though, correct? Ineffective at the penalty phase, but found to be competent at the guilt phase. And he was given counsel on the direct appeal from the prior conviction. It's the same disbarred counsel on both phases. It's just that he wasn't, you know, on direct appeal, found ineffective. But it's still the same counsel. All I'm saying is that it's not really fair. A lot of this evidence has been developed more recently. That's true. So we shouldn't be arguing he waited 25 years. Well, I mean, it's if you look at it, you can look at it from that perspective. But on the other hand, he hasn't given the court 25 years to consider that evidence. The court has not, you know, maybe he has not had the opportunity to develop it entirely except until, you know, the last 20 years. But it's not the court's fault that he has taken that long to develop. He's had, you know, he had counsel at trial. He had counsel on his first direct appeal. He had counsel on his first State habeas. He's now got counsel on his direct appeal. He's got a separate team of attorneys handling his State habeas. And yet a third attorney, Mr. Bryant, handling his Federal habeas. He's got a lot of resources at his disposal, and he has throughout the process. Lastly, I'd like to address what is really the first point, which is the jurisdictional matter. I do not believe that the district court's order is a final order. It was an order made at a point in time that said, at this point you have failed to show circumstances to justify excusing exhaustion. And I believe Petitioner can renew that motion. And his claim that he has no remedy is simply false. He has a mandamus remedy. And this Court, of course, does have the discretion to treat this appeal as a mandamus from that. If it's not a final order, is a COA required? If it's not a final order, no. But he's out of court on 1291. No, no, no, no. Cohen v. Beneficial Life doesn't say. It says we will treat certain collateral issues as subject of appeal, but it doesn't transform it into a final order. I'm sorry. I'm not following you. Well, if you read the language of Cohen v. I'm obviously familiar with Cohen. Let me see if I can find the language. It doesn't say, it says we will, let me see, falls in that small class which finally determine claims of right that are separate from and collateral to rights asserted in the action, too important to be denied review, and too independent of the cause itself to require appellate consideration be deferred. So it doesn't say that this is a final order at all. It says it's a reviewable collateral order. That's true. But subsequent cases have interpreted Cohen as saying that it's not an exception to the final order rule, it's really an explanation of the final order rule. But I think it's semantics either way. If he doesn't fall within the Cohen criteria, he can't appeal under 1291. And that's really the problem I'm having with it, because it does seem as though it falls under the Cohen criteria for that 19-month period. That if we were to hold that, then we could have one for the 24-month period and the 34-month period. So I'm wrestling with how that would really apply there. Well, and even if it falls within the Cohen criteria and it is a final order, I think it has to be a final order under 2253. And, therefore, a certificate of appealability is required and none has been granted. And, in fact, Petitioner in his reply at page 5 asserts jurisdiction under 2253. Right. We can also treat it as a notice of appeal as a request for a COA and grant it if we wanted to. It's almost as technical. Well, yes. I mean, you're right. This Court could grant a certificate of appealability today, but, you know, unless and until it does, there's no jurisdiction. And I would be remiss if I didn't point that out. Okay. Yeah. But I think the more interesting and problematic issue, of course, is the merits and what period, length of time and all of that. Right. Right. Well, you know, I think — I don't think 33 months from the time that Petitioner stayed habeas was completely bereaved is an undue length of time. This is an incredibly complex capital case. There's a lot to be considered. You know, he raises complex issues. And I think the amount of time that is taken is not inordinate delay. If you look at the other circuit cases, they talk about 8 years, 11 years. And those are non-capital cases. It just doesn't rise to that level at this point. All right. Unless the Court has any questions. Thank you. Thank you, counsel. Did you have time left? Yes, you did. I'm showing 1.45. All right. If I may. First, I would like to point out to Your Honors that in my opening brief, I actually listed on page 26, as of that time, well, it's this year, earlier this year, of exhaustion petitions that had been pending 3 years or longer. And it's probably not all-encompassing, but you'll see on that list, just to make this, put this in reality, this situation involving Mr. Gay, 9 years, 8 years, 14 years, 10 years, 10 years, 9 years, 6 years, 5 years, 10 years. These are cases that have gone back to state court, from federal court, for exhaustion of unexhausted claims. This is how long. And I have another one of my cases, Baggi Gallupo, has an incredibly old case that's been pending. So this is not unusual. Mr. Winters, in his brief, in the athlete's brief on page 5 at the top, made reference to, he's talking about exhaustion, and he mentions that, or there could be a waiver from the respondent. Well, the respondent is so concerned about, let's do justice in this unusual situation. Why doesn't the respondent just bite the bullet and say, okay, this is the exceptional case. We will agree that in this case you should be able to go federally, subject to, of course, the U.S. District Court being agreeable with that. Judge Alekharn, in his article, I think we'll go back to that, but, quotes Judge Ronald George, Chief Justice of the State Supreme Court, as referring to the death penalty process and these extraordinary delays as being dysfunctional. And Senator Feinstein sent a letter 2 years ago to the governor, asking for help, for the state to do something to help us cure this remarkable problem we've got. Finally, I'd like to say in my time as CSO, I would just like to ask this. We, not Robert Bryan or Mr. Gay, but we, the state, petitioner, appellant, and certainly the California Supreme Court, we, I'm asking you, we need direction in this unusual situation. And, of course, it is correct that we have to meet a threshold of showing that we have a persuasive case of innocence to move forward. But there's nothing now, and we're in legal limbo. Thank you, Your Honors. Thank you to both counsel for excellent argument. And perhaps you could tell your boss this illustrates why you shouldn't certify us as an expedited State for purposes of one-year Federal review. Anyway, thank you very much. This case will be submitted, and this will adjourn, and we will adjourn this session of this court for today. Thank you very much. This court for this session stands adjourned. And then a year or two after that, we'll do it again. And then you can ask them again. I know, I know what you're saying. But there are other options. I mean, the court will do a lot of things. Well, in that case, I should add, as was mentioned, there are other options. R.P. suggested. That was his. That was his. Judge, he's not the jury. Yeah. Yeah. Oh, yeah. I have to ask. No, no. We have a motion. We have a motion. I know you can do more. Do you want some? No, no.  We have a motion. And we're going to have a nightmare in this case. The CTs. I'm told by Kathy. Oh, you're a CT. We have a lot of clients. One particular client. So I call Robin. And she was real kind. I think it was last Friday. She got through. And she said, I need my money now. Ten minutes later, she calls back. She said, what I need my money now. And she looks at it. And hers was different from mine. Hers matched with mine.  Because I had to change it. No, let me tell you this. I changed my mind. I changed my mind. Then, on Sunday evening, I discover that what you have and what Kath has is different.
judges: Thompson, Wardlaw, Ikuta